Hillsborough,
April 3, 1928.

ILENE D. STACY, *Adm'x*, *v.* F. M. HOYT SHOE COMPANY.

*James A. Broderick* (by brief and orally), for the plaintiff.

*Lucier & Lucier* (*Mr. Alvin A. Lucier* orally), for the defendant.

BRANCH, J. The defendant contends that the release above set forth constitutes a bar to the present action as a matter of law. It bases its argument upon the rule that "the release of one joint tort-feasor is a bar to a suit against the others." The law was thus stated in *Wheat* v. *Carter*, 79 N. H. 150, and this statement may have its uses as a concise formula by which reference may be made to a number of legal doctrines incapable of compression into such limited compass, but as pointed out in that case, it cannot be accepted as an accurate exposition of the law. It must constantly be borne in mind that the release is not in and of itself a bar to a subsequent suit against a joint wrongdoer. It is rather the satisfaction of the claim for the injury sustained which bars further actions. *Wheat* v. *Carter, supra; Carpenter* v. *Company,* 78 N. H. 118; *Masterson* v. *Railway, ante,* 190. A release of one jointly liable may or may not establish such satisfaction. *Masterson* v. *Railway, supra.* It should also be observed that the reference to "joint tort-feasors" does not mean that satisfaction for an injury by one inures only to the benefit of others who are in fact and in law jointly liable for the wrong. It is sufficient if a claim of liability for the wrong in

question was made against the releasee and included in the settlement with him. "When a pretended claim for a tort has been settled by treaty, and satisfaction rendered the claimant by one so connected with the trespass as to be reasonably subject to an action and possible liability, as a joint tort-feasor, the satisfaction rendered will release all who may be liable, whether the one released was liable or not." *Cleveland &c. Ry Co.* v. *Hilligoss*, 171 Ind. 417, 425; *Carpenter* v. *Co.*, *supra*, 124.

In the present case the defendant seeks to secure the benefit of the release of the United Shoe Machinery Corp. upon the ground that it evidences satisfaction of a wrong for which it and the releasee were jointly liable. Before the defendant can avail itself of the rule thus invoked it must be made to appear that the liability released was of the kind to which the rule applies, viz., that the wrong was one for which the Machinery Corporation and the defendant were, or might have been jointly liable, or that a claim of liability for this wrong was made against the releasee by the plaintiff when the settlement with it was negotiated. In other words, the subject-matter of the contract releasing the Machinery Corporation must be ascertained and defined in order to establish the defendant's right to claim under that contract. The language of the release itself is inadequate for this purpose. The phraseology indicates that it is very likely an adaptation of a printed form and its terms are so broad as to be inconclusive for the purpose of determining what specific liabilities or claims of liability were actually dealt with at the time of its execution. There is nothing in the release to show either that the Machinery Corporation was jointly liable with the defendant for the death of the intestate or that a claim of liability for causing his death was made against it by the plaintiff and discharged by the release. In fact it contains recitals that may mean that such was not the fact. It recites that the payment is made under the employers' liability and workmen's compensation act. This statement is ambiguous because the statute referred to (P. L., c. 178), as indicated by its title, is of a dual character. It provides compensation to injured workmen in certain employments and under certain conditions and establishes a new rule of liability for damages to injured employees if compensation is not available to them. There is nothing in the statement above quoted to indicate whether the payment was made in settlement of a claim for compensation with which the defendant could have no concern, or a claim for damages for which the defendant might be jointly liable. Either

of these claims might have been made under the statute referred to.

In *Wheat* v. *Carter, supra*, which was a petition for an injunction to restrain the prosecution of an action at law by Carter against Wheat upon the ground that he had already released his employers, the court said: "the test to determine whether the release is a bar to his suit against the plaintiffs is to inquire as to the extent of the claim he made at the time he settled with Fellows & Son. Was he claiming to recover all the loss he sustained as the result of the original injury to his hand or only the loss which resulted immediately from that injury? However the fact may be in other states, in this jurisdiction the issue raised by that inquiry is an issue of fact to be determined, like all such issues, by the weight of competent evidence." The same test should be applied in the present case.

An examination of the statute clearly indicates that payment of the compensation therein provided was not intended to be a full equivalent for the damages suffered. No allowance for the element of pain and suffering is made and the compensation provided is, by its terms, expressly limited to a partial allowance for incapacity. P. L., *c.* 178, *s.* 19. Since the theory upon which a discharge of one wrongdoer operates to discharge others is that their common liability has been fully satisfied, it follows that if there has been only a partial satisfaction of that liability, it should constitute only a partial discharge of other wrongdoers. It is accordingly held that a covenant not to sue one party does not discharge the liability of others who may be jointly liable (*Masterson* v. *Railway, supra*) and a release of one containing a reservation of rights against another disproves satisfaction. *Carpenter* v. *Company, supra*, 120. By parity of reasoning it must be held that the release of a statutory liability to make partial compensation for an injury does not operate as a full discharge of others who may be liable for the same wrong.

It was argued by the defendant that the acceptance of compensation under the statute operates to bar all actions against third persons for the same injury, by reason of the following provision of the act: "In case the injured workman, or in event of his death his executor or administrator, shall avail himself of this chapter, either by accepting any compensation hereunder, by giving the notice hereinafter prescribed, or by beginning proceedings therefor in any manner on account of any such injury, he shall be barred from recovery in every action at common law or under any other statute on account of the same injury." P. L., *c.* 178, *s.* 11. The

suggested interpretation of the statute cannot be adopted. The act concerns itself solely with mutual rights and liabilities based upon the relationship of master and servant. It does not purport to define, enlarge or restrict the rights of workmen against persons other than their employers, and it must, therefore, be held that the only actions which are barred by the acceptance of compensation are actions against the employer. The decisions in other jurisdictions which construe somewhat similar provisions in other statutes do not appear to be harmonious, but their differences result chiefly from variations of the language in the different acts and for this reason they do not invite extended consideration at this time. Reference may be made, however, to the note to *Reutenik* v. *Company* (132 Wash. 108) in 37 A. L. R., 830, 838, where the recent cases are collected, and other notes in the same series which are mentioned therein. If, therefore, the only claim made by the plaintiff and settled by the payment of three thousand dollars was one for compensation under the statute, the release would not operate as a bar to the present action although the amount paid might be applied in reduction of the damages for which the defendant may be held liable. *Martel* v. *Wallace, ante,* 276.

Since the release itself does not establish the necessary relation between the releasee and the defendant to bring the defendant within the scope of its operation it is plain that the defendant's position can be maintained only by resorting to extrinsic evidence. The inquiry is whether the writing was intended to cover a certain subject. "This intent must be sought where always intent must be sought . . . namely, in the *conduct and language* of the parties and the *surrounding circumstances.* The document alone will not suffice. What it was intended to cover cannot be known till we know what there was to cover." 5 Wig., Ev. (2d *ed.*), s. 2430. The burden, therefore, rested upon the defendant to allege and prove the facts necessary to make good its claims under the release. If it had been alleged in the defendant's brief statement that the claim for which the plaintiff settled with the Machinery corporation was the same one which she is seeking to enforce in the present suit, a question of fact would have been presented upon which the plaintiff might have taken issue. Since the brief statement did not allege this necessary fact, the plaintiff's demurrer was properly sustained.

It is upon this point that the present case is clearly distinguishable from *Carpenter* v. *Company, supra.* In that case the court said: "That the plaintiff proceeded upon the theory that the re-

leasee was liable in damages for the injuries he suffered can admit of no doubt; for the release is based upon that theory; its language admits of no other construction. The plaintiff was not seeking a mere gratuity from his employer but was asserting a right of action against him for damages on account of his injuries, which constitute the basis of his present action. . . . There is no intimation that the forty dollars paid to him by Totman was in the nature of partial compensation for his injuries, or that he expected to recover a further sum of the defendant." *Ib.*, 122, 123. It is in the light of these findings that we must read the final conclusion of the court in that case which was as follows: "The plaintiff cannot now be permitted to take the position that the releasee was entirely free from the fault upon which the settlement was predicated, in order to obtain further damages from the defendant." *Ib.*, 125. It is plain that the court here was not laying down the general rule of law as to the effect of releases, but was considering only the conclusions of fact which might properly be drawn from the language of the release, the allegations of the declaration and the facts reported in that case.

The foregoing conclusion in no way conflicts with the parol evidence rule which has been stated as follows: "In a suit at law between the parties to a written agreement or those claiming under it, extrinsic evidence is not admissible to contradict or alter its terms." *Libby* v. *Company*, 67 N. H. 587. Even if the present suit were against the United Shoe Machinery Corporation, extrinsic evidence to determine the subject-matter of the agreement would be admissible, although the terms of the release would be binding upon the parties after that fact was ascertained. 5 Wig., Ev. (2d *ed.*), s. 2430; *Smart* v. *Huckins*, 82 N. H. 342, 347; *Osgood &c. Co.* v. *Claremont*, 81 N. H. 29, 34; *Weston* v. *Ball*, 80 N. H. 275. In the present case, however, until the defendant's relationship to the release is established by evidence, it stands in the position of a stranger to the transaction who is neither bound by the rule above stated (*Libby* v. *Company*, *supra; Gage* v. *Dow*, 59 N. H. 383; *Johnson* v. *VonScholley*, 218 Mass. 454; 5 Wig., Ev. (2d *ed.*), s. 2446), nor entitled to claim its benefits. *Bixby* v. *Thurber*, 80 N. H. 411, 417; *Wheat* v. *Carter*, *supra*, 152. If upon a trial it should be established that the release discharged a claim of liability against the releasee for which the defendant would be jointly liable, the defendant would cease to be a stranger to the instrument, and would acquire the position of one "claiming under it." It would then be entitled to

insist that the release be taken at its face value, and a situation would be presented where the parol evidence rule which "bars evidence of an intention contrary to that shown by a written release," would apply. *Masterson* v. *Railway, supra; Carpenter* v. *Company, supra; Goss* v. *Ellison*, 136 Mass. 503; *Allen* v. *Ruland*, 79 Conn. 405; *Denver &c. Ry Co.* v. *Sullivan*, 21 Col. 302; 5 Wig., Ev. (2d ed.), s. 2446.

*Exception overruled.*

All concurred.