## CLEVELAND, CINCINNATI, CHICAGO & ST. LOUIS RAILWAY COMPANY *v.* HILLIGOSS.

[No. 21,138.    Filed December 16, 1908.]

1. PLEADING.— *Complaint.— Railroads.— Negligence.*—A complaint
alleging that defendant railroad company negligently ran, backed
and "kicked" one of its cars over a street crossing, to plaintiff's
damage, sufficiently shows a breach of duty toward plaintiff.
p. 420.

2. SAME.— *Complaint.— Railroads.— Street Crossing Accidents.—
Question for Jury.*—A complaint alleging that the plaintiff, a
street-car conductor, stopped his car near a railroad crossing,
alighted, walked upon the crossing, looked both ways for ap-
proaching cars, but saw none, signaled his motorman to cross,
and that defendant railroad company negligently ran one of its
cars into his car, injuring him, is sufficient, whether he was
justified in attempting to cross at the time being a question for
the jury.    p. 420.

3. TORTS.—*Single Injury Caused by Several Persons.—Liability.—
Satisfaction.*—For a single injury, whether caused by one or sev-
eral persons, there can be but one satisfaction, and a satisfaction
by one of several inures to the benefit of all.    p. 423.

4. ACTION.—*Joint or Several.—Torts.—Election.*—The plaintiff may
elect to sue one or all joint tort-feasors which he charges with
liability for the commission of an injury.    p. 423.

5. SAME.—*"Release."—"Satisfaction."—Torts.*—A plaintiff, in a
case of tort, may "release" one or more joint tort-feasors without
losing his right of action against the others, but he cannot receive
a "satisfaction" from one without releasing all.    p. 423.

6. SAME.—*Torts.—Satisfaction.—Contracts.*—A contract purporting
to be a satisfaction for a wrong, and a release of a wrongdoer
who is jointly liable with others, in order to be a complete dis- ·

charge of all, must show clearly that the injured party has surrendered to such wrongdoer all claim for recompense on account of the wrong committed. p. 423.

7. ACTION.— *Compromise.—Admissions.—Presumptions.—Railroads.*—A compromise entered into between a servant and a railroad company does not of itself constitute an admission of liability on the part of the company. p. 425.

8. TORTS.—*Joint Liability.—Satisfaction by One.*—It is not necessary for joint tort-feasors to show, in order to escape liability, that another joint tort-feasor who has satisfied the demand against him, was in fact liable, an appearance of liability being sufficient. p. 425.

9. PLEADING.—*Answer.—Satisfaction by Joint Tort-Feasor.—Railroads.*—An answer, in an action for personal injuries against a railroad company, that plaintiff has settled his cause of action with a joint tort-feasor, need not show any demand or avowed claim against such joint tort-feasor. p. 426.

10. COMPROMISE AND SETTLEMENT.— *Consideration.— Retention.— Estoppel.*—An injured person receiving a consideration from a joint tort-feasor and retaining it will not be heard to deny any claim against such person. p. 427.

11. CONTRACTS.— *Compromise.— Consideration.— Damages.—Unliquidated.*—An agreement in compromise of a claim for personal injuries cannot be impeached because of a want of, or an inadequate, consideration, where the injured party retains the consideration given, the recoverable damage being unliquidated and uncertain. p. 427.

12. SAME.— *Compromise.— Consideration.— Railroads.—Reëmployment.*—A contract of reëmployment of an injured servant, by a railroad company, constitutes a legal consideration for a satisfaction of a claim for damages for injuries received. p. 427.

From Madison Circuit Court; *John F. McClure,* Judge.

Action by James W. Hilligoss against the Cleveland, Cincinnati, Chicago & St. Louis Railway Company. From a judgment for plaintiff, defendant appeals. *Reversed.*

*L. J. Hackney, Frank L. Littleton, Carey E. Cowgill* and *John J. Kelly,* for appellant.

*A. H. Vestal, Fred Van Nuys, W. A. Kittinger* and *William S. Diven,* for appellee.

HADLEY, J.—Appellee sues to recover for injuries received in a collision between a freight-car, belonging to appellant, and an electric street-car, under control of appellee, and be-

longing to the Indiana Union Traction Company. Said collision occurred at a grade crossing in the city of Anderson, through the alleged negligence of appellant. There are two paragraphs of complaint, each of which was held good on demurrer for insufficient facts. There are two answers—a general denial and one affirmative—to the latter of which a demurrer for insufficient facts was sustained, and an exception reserved. Verdict for $12,500, for which, over appellant's motion for a new trial, judgment was rendered.

Error is assigned on all adverse rulings.

The two paragraphs of the complaint are substantially the same. It is alleged in both that the plaintiff was the conductor in charge of an electric car, which was being operated by the Indiana Union Traction Company on Meridian street, which runs north and south in the city of Anderson, under a franchise from said city; that defendant operates a steam railroad running east and west, which crosses the track of the Indiana Union Traction Company at grade in a populous part of said city, and has, at the point of intersection, a large number of tracks; that it was the duty of the plaintiff, as such conductor, to cause said car to be stopped before reaching defendant's tracks, and then to leave said car and go across said tracks to see whether any train was approaching thereon, and, when none was approaching, to signal his motorman operating the electric car to come on across said track; that, on the day of the accident, the plaintiff was running his car southward, and, when it had approached within fifteen or twenty feet of defendant's tracks, he caused his said car to be stopped, and went southward in Meridian street on and across said tracks, and found thereon no trains or cars approaching said crossing on any of the tracks of said steam railway; that, having thus observed that there were no trains, engines or cars of any kind in motion, or attempting to cross said Meridian street, plaintiff signaled the motorman operating said car to proceed over defendant's said tracks; that said motor-

man obeyed said signal, and proceeded southward on the street-car track, across said railway tracks, and, while said car was moving, the plaintiff boarded it in safety; that "said defendant then and there carelessly and negligently, without any warning to the plaintiff, or to any one else, ran, backed and 'kicked' one of its cars, with one of its engines, with great force and violence from east to west, on and along one of its said tracks crossing Meridian street, and against said moving electric car, so occupied and managed by the plaintiff, thereby crushing said electric car and causing great injury to the plaintiff."

The objections presented to the complaint are: (1) That the acts complained of fail to constitute negligence in the appellant; that the allegation that the appellant negligently ran, backed and "kicked" one of its cars over the crossing, etc., without first giving warning to the appellee or to any one else, is insufficient to show a breach of any duty appellant owed to appellee. We think otherwise. (2) That the complaint shows that appellee was guilty of contributory negligence in this: It is alleged that the appellee went southward over the crossing, and, seeing no trains, engines or cars approaching the crossing, signaled his motorman to proceed to make the crossing. "It is not alleged," says appellant, "that he [the plaintiff] continued to look. It was his duty not only to continue to look until he had passed the crossing, but to look at a time and place when and where his observations would be effective." If, before crossing, he stopped his car, and walked southward across the railroad tracks to ascertain whether there were trains, engines or cars approaching the crossing on any of said tracks, and seeing none, as he alleges, he signaled his motorman to proceed to make the crossing, whether he was justified, by the nonappearance of approaching cars, in giving the signal to the motorman immediately after passing over the crossing, or whether he should have stood on the crossing and looked, for any definite period, for

approaching cars, before signaling the motorman to advance, was, to say the least of it, a question of fact for the jury. As against the demurrer, we find no sufficient reason for condemning either paragraph of the complaint.

Did the court err in sustaining appellee's demurrer to the second paragraph of answer? Said answer, in effect, alleges that the cut of cars in charge of appellant's employes, and the street-car operated by the traction company's motorman, were each moving towards the crossing at a speed of about five miles per hour; and when the street-car had arrived at a point thirty-five feet from the crossing, and the cut of cars was fifty feet from the crossing, the cut of cars, which had the right of way, was then in plain view of said motorman, and he had plenty of time to stop his car and avoid the collision and injury; but, on the contrary, he negligently continued to run his car forward, and reached the crossing point at the same time the cut of cars reached it, and thereby caused the collision and the plaintiff's injury. With reference to this part of the answer, appellant makes the point that it shows that the proximate cause of the plaintiff's injury was the negligence, not of appellant company, but of the Indiana Union Traction Company, in heedlessly running its car onto the crossing, in front of the moving cut of cars, and cites *Thompson* v. *Citizens St. R. Co.* (1899), 152 Ind. 461, in support of the contention. However, the view of the answer that we have taken makes the question here raised unimportant, and we express no opinion concerning it. It is further averred that the collision was caused by the joint acts of said traction company, through its motorman operating said street-car, and the railroad company, through its employes in moving a cut of cars over the crossing; and if there was negligence on the part of the appellant, as alleged by the appellee, in moving its cut of cars over the crossing, nevertheless the appellee's injuries would not have occurred had it not been for the act of the traction company's employe in negligently running said street-car onto said crossing at

the same time the appellant's cut of cars was in the act of crossing the same; and so the appellant says "that, if the collision resulted, in any particular, through the negligence of its employes, it was through the joint act and joint negligence of the employes of said two companies that said collision and the plaintiff's injuries occurred." It is then averred that on December 30, 1905, the appellee, for a valuable consideration, fully released the traction company from all liability arising from said collision, which release was in writing, and in the following words and figures:

"Whereas, on November 24, 1905, James W. Hilligoss, while in the employ of the Indiana Union Traction Company, as conductor, was injured about the head, arms, body and otherwise injured when freight-car collided with South Meridian street car, in an accident which occurred on the lines of said traction company, at or near Meridian street crossing of Big Four Railway. Now, therefore, in consideration of the agreement of said traction company herein contained to reëmploy said employe for such time only as may be satisfactory to it, said James W. Hilligoss agrees to and does hereby receipt, release and forever discharge said traction company of and from any and all liability, claims and demands of every kind and character that he, said employe, ever had against said traction company to date, and especially from all claims and demands of any nature arising out of or due to the accident aforesaid, said traction company hereby agreeing, in consideration of the foregoing, to employ said employe so long as satisfactory to it, and not otherwise.

Witness the names of the parties this 30th day of December, 1905.

James W. Hilligoss.

Indiana Union Traction Company,

By Ellis C. Carpenter,

Claim Adjuster."

And it is alleged that the release of the traction company was a full and complete release of the defendant, and judgment is demanded accordingly.

It is an ancient and well-established rule, almost without exception in England and America, that for a single in-

jury there can be but one recompense. When more persons than one unite in the commission of a wrong, each is responsible for the acts of all, and for the whole damage; also, where separate and independent acts of negligence by different persons concur in causing a single injury, each is fully responsible for the trespass. Courts will not undertake to apportion the damage in such cases among the joint wrongdoers. The injured party has, at his election, his remedy against all, or any number. 1 Cooley, Torts (3d ed.), *153. He may elect to look to one only, and, if he accepts from that one a benefit, or property, in satisfaction and release, he can go no further. He cannot have a second satisfaction. Having had a reparation from one who was responsible for all the damage, and released him, all others who were jointly, or jointly and severally, liable are also released. One satisfaction is a bar to further proceedings on the same cause of action. *Fleming* v. *McDonald* (1875), 50 Ind. 278, 19 Am. Rep. 711; *Ashcroft* v. *Knoblock* (1896), 146 Ind. 169, 174.

There is a clear distinction, however, recognized by the courts, between a "satisfaction" and a "release," growing out of the right of the injured party to choose whether he will seek redress against all or a less number of those jointly liable to him. On the one hand, a naked promise not to sue, an action against a part only of the joint tort-feasors and a forgiveness of the others, or a formal release, unsupported by a consideration, will in neither case operate as a release of those not favored. In other words, a release in fact may be given to a part of the joint trespassers, although no part of the damage has been paid, and those not released held liable for the whole. On the other hand, a contract, which purports to be a satisfaction for the wrong, and a release of the wrongdoer, jointly liable with others, to be effective, must clearly show that the injured party, for a consideration, has surrendered to the party in whose favor the contract runs all claim for

recompense for and on account of the trespass complained of. If it does so appear, there can be no further proceeding, for the right of action for the wrong is forever gone. *Miller* v. *Beck & Co.* (1899), 108 Iowa 575, 582, 79 N. W. 344; *Brown* v. *City of Cambridge* (1862), 85 Mass. 474; *Hartigan* v. *Dickson* (1900), 81 Minn. 284, 83 N. W. 1091; *Eastman* v. *Grant* (1861), 34 Vt. 387; *Seither* v. *Philadelphia Traction Co.* (1889), 125 Pa. St. 397, 17 Atl. 338, 4 L. R. A. 54, 11 Am. St. 905; *McBride* v. *Scott* (1903), 132 Mich. 176, 93 N. W. 243, 61 L. R. A. 445, 102 Am. St. 416; *Dulaney* v. *Buffum* (1903), 173 Mo. 1, 73 S. W. 125; *Ducey* v. *Patterson* (1906), 37 Colo. 216, 86 Pac. 109, 9 L. R. A. (N. S.) 1066, 119 Am. St. 284; *Abb* v. *Northern Pac. R. Co.* (1902), 28 Wash. 428, 68 Pac. 954, 58 L. R. A. 293, 92 Am. St. 864; *Allen* v. *Ruland* (1906), 79 Conn. 405, 65 Atl. 138, 118 Am. St. 146; *Butler* v. *Ashworth* (1895), 110 Cal. 614, 618, 43 Pac. 4, 386; 1 Cooley, Torts (3d ed.), *161.

Appellee insists that this answer proceeds upon the single theory of a release and that it is not good upon that theory, because it pleads facts to show that the traction company, to whom the release was executed, was not a joint tortfeasor, and was not in any way liable to appellee and, further, that it fails to show that the appellee ever made any claim for damages against the company on account of his injury. To sustain this contention, he relies on *Kentucky, etc., Bridge Co.* v. *Hall* (1890), 125 Ind. 220.

In the case last cited, the answer of release was traversed, and the question before the court was one of evidence and not of pleading. It is said at page 223: "No question was raised as to the sufficiency of the second paragraph of answer, and hence we are not called upon to consider it." Neither a copy, nor any part of the contents, of the release is given, and in commenting on the evidence the court said: "But the evidence fails to show that he ever made any demand against that company for damages on account of the injury, or ever claimed that it was in any way responsible

for the accident. The circumstances proven, brought out by the appellant, show to the contrary. * * * From the evidence before them the jury might well conclude that the Louisville, Evansville & St. Louis Railway Company was in noway responsible for the accident, and, if not, there was no joint liability to which the rule that the release of one joint wrongdoer has the effect to discharge all others might apply." Under the meager facts given in the case relied on, we cannot accept it as an authority, for reasons that will be developed as we proceed.

With reference to the releasor and releasee, it may be said that the courts will not permit one suffering a wrong to profit by the fears of those occupying positions subjecting them to the suspicion of being the wrongdoers, and who are willing to buy their peace rather than run a risk at law. One who compromises a claim does not necessarily admit that the claim was well founded, but the one who receives the consideration is precluded from denying that it was. So it may be said that when a pretended claim for a tort has been settled by treaty, and satisfaction rendered the claimant by one so connected with the trespass as to be reasonably subject to an action and possible liability, as a joint tort-feasor, the satisfaction rendered will release all who may be liable, whether the one released was liable or not. In such a case it is not necessary that it should appear that the party making the settlement was in fact liable. It will be deemed sufficient if there is an appearance of liability; that is, something in the nature of a claim on the one hand, and a possible liability under the rules of law on the other. *Miller* v. *Beck & Co.* (1899), 108 Iowa 575, 79 N. W. 344; *Leddy* v. *Barney* (1885), 139 Mass. 394, 2 N. E. 107; *Hubbard* v. *St. Louis, etc., R. Co.* (1903), 173 Mo. 249, 72 S. W. 1073; *Hartigan* v. *Dickson, supra; Denver, etc., R. Co.* v. *Sullivan* (1895), 21 Colo. 302, 41 Pac. 501; *Tompkins* v. *Clay St. R. Co.* (1884), 66 Cal. 163, 4 Pac. 1165; *Abb* v. *Northern Pac. R.*

*Co., supra; Pickwick* v. *McCauliff* (1906), 193 Mass. 70, 75, 78 N. E. 730.

In *Miller* v. *Beck & Co., supra,* it is said at page 578 : "In accordance with this rule, it has frequently been held that the validity and effect of a release of a cause of action does not depend upon the validity of the cause of action, and that if the claim is made against one, and it is satisfied, all who may be liable are discharged, whether the one released be liable or not."

From the case of *Leddy* v. *Barney, supra,* we quote, from page 397, as follows : "The rule that a release of a cause of action to one of several persons liable operates as a release to all, applies to a release given to one against whom a claim is made, although he may not be in fact liable. The validity and effect of a release of a cause of action do not depend on the validity of the cause of action. If a claim is made against one and released, all who may be liable are discharged, whether the one released was liable or not." · This text is quoted with approval in *Denver, etc., R. Co.* v. *Sullivan, supra.*

It is said by Judge Cooley, in his excellent work on torts : "Therefore, if he [the injured party] accepts the satisfaction voluntarily made by one, that is a bar to all. And so a release of one releases all, although the release expressly stipulates that the other defendants shall not be released. And this rule is held to apply, even though the one released was not in fact liable." 1 Cooley, Torts (3d ed.), *161.

It was not necessary to aver in the answer a demand or an avowed claim for damage against the traction company as a basis for the release agreement. The agreement is made a part of the answer, and provides that, in consideration of the agreement of said traction company to reëmploy the plaintiff,

> "said James W. Hilligoss agrees to and does hereby receipt, release and forever discharge said traction company of and from any and all liabilities, claims and de-

mands of every character that he, said employe, ever had against said traction company to date, and especially from all claims and demands of any nature arising out of, or due to, the accident aforesaid.''

As against such an acknowledgment, and the receipt and retention of the consideration, the appellee will not be heard to say that he had no claim against the traction company. *Brown* v. *City of Cambridge* (1862), 85 Mass. 474, 476; *Tompkins* v. *Clay St. R. Co., supra.* Neither can he be heard to complain that there was a want of, or an inadequate, consideration. His recoverable damage, if any at all, was unliquidated and uncertain. It might be much or little, and whatever consideration he accepted as satisfaction for what he surrendered will be held as adequate. That he accepted appellant's covenant for reëmployment in satisfaction is incontrovertible from the language of the release, and that was a sufficient consideration.

The payment of full wages for a month, without regard to the ability of the injured party to earn it, has been held a sufficient consideration to support a release. *Jackson* v. *Pennsylvania R. Co.* (1901), 66 N. J. L. 319, 322, 49 Atl. 730, 55 L. R. A. 87; *Allen* v. *Ruland, supra.* It was said in the case last cited that ''whether the sum was large or small was immaterial, since the demand extinguished was wholly unliquidated.''

The facts pleaded in the answer show at least the semblance of a right of action in favor of appellee against the traction company. As we have seen, this is enough to uphold the release.

We think the demurrer should have been overruled. There are numerous other questions reserved that we leave unconsidered, as they are not likely to arise again.

The judgment is reversed, with instructions to overrule the demurrer to the second paragraph of answer, and for further proceedings not inconsistent with this opinion.